# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *   *
JESSICA R. MARTIN,                        *
On behalf of KM,                          *
                                          *    No. 16-318V
                 Petitioner,              *    Special Master Christian J. Moran
v.                                        *
                                          *    Filed: January 22, 2019
SECRETARY OF HEALTH AND                   *
HUMAN SERVICES,                           *
                                          *    Attorneys' Fees and Costs,
                 Respondent.              *    Guardianship Costs.
                                          *
* * * * * * * * * * * * * * * * * * * *   *
```

Dan W. Bolton, III, Bolton Law, PLLC, Cary, NC, for Petitioner;
Voris E. Johnson, Jr., United States Dep't of Justice, Washington, DC, for
Respondent.

## PUBLISHED DECISION AWARDING FINAL ATTORNEYS' FEES AND COSTS[1]

Jessica Martin brought a successful petition for compensation from the National Childhood Vaccine Compensation Program.  She originally sought $67,049.37 in attorneys' fees and costs.  An October 31, 2018 decision awarded her the "irreducible minimum" in attorneys' fees, and left controversial issues for another day.  At bar now are those controversial items, which include her request

---

[1] Because this decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  This means the decision will be available to anyone with access to the internet.  In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the decision.

for costs and attorneys' fees incurred since judgment entered.  For these, she seeks an award of $33,549.37.  She is awarded $26,542.85.

\*     \*     \*

Represented by Dan Bolton, Ms. Martin filed her petition, on behalf of KM, for compensation on March 11, 2016.  Ms. Martin claimed that various vaccines, which are contained in the Vaccine Injury Table, 42 C.F.R. §100.3(a), and which KM received on August 23, 2013, caused KM to suffer transverse myelitis.  The parties were able to resolve the case informally, entering a joint stipulation that was then adopted.  The stipulation provided for one lump sum payment for the benefit of KM via a "check payable to petitioner as court-appointed guardian/conservator of the estate of KM," one lump sum payment to petitioner for past unreimbursed expenses, and the purchase of an annuity in which the life insurance company promised to pay a certain amount per month for KM's life "to petitioner, as the court-appointed guardian/conservator of the estate of KM." Decision, issued Oct. 23, 2017, 2017 WL 6522406 (quotations from stipulation ¶ 8 and ¶ 10).  Judgment entered on Oct. 31, 2017.

The stipulation adopted in the decision provided that Ms. Martin would be established as the guardian of KM's estate before any payments pursuant to the stipulation were made.  Stipulation at ¶ 16.[2]  Under North Carolina law, a guardian of an estate must provide a surety.  N.C. GEN. STAT. §35A-1230.[3]  This requirement is reinforced in the next sequential statute:  "Before issuing letters of appointment to a general guardian of the estate the clerk shall require the guardian to give a bond payable to the State."  N.C. GEN. STAT. §35A-1231(a).  The amount

---

[2] This paragraph provides: "Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of KM's estate under the laws of the State of North Carolina. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian/conservator of KM's estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of KM at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of KM upon submission of written documentation of such appointment to the Secretary."

[3] In pertinent part, this statute states: "[N]o general guardian or guardian of the estate shall be permitted to receive the ward's property until he has given sufficient surety, approved by the clerk, to account for and apply the same under the direction of the court."  N.C. Gen. Stat. §35A-1230.

2

of this bond is determined by statute. Id. Ms. Martin has paid this bond. See Pet'r's Mot., filed Mar. 8, 2018, appd'x 3 at 9.

On February 19, 2018, Ms. Martin filed a motion to amend the October 31, 2017 judgment. Ms. Martin requested the judgment include the cost of securing this bond, which totals approximately $1,000 per year.[4]

The Secretary responded to petitioner's motion in two parts. First, the Secretary argued that it was custom in the Vaccine Program to consider costs associated with maintaining a guardianship as part of the attorneys' fees and costs process. Resp't's Resp., filed Feb. 27, 2018, at 3 (citing four cases where guardianship costs were considered as part of that process). The Secretary continued that amending the judgment was an unnecessary difficulty since the undersigned could award the guardianship fee as part of the petitioner's request for attorneys' fees and costs. Id. ("if the Special Master were to award any amount for the guardianship bond fee, it would not be necessary (and in fact would be more complicated) to amend the October 31, 2017 Judgment"). The second part of the Secretary's argument was a "prospective[]" objection to petitioner's not yet filed motion for the guardianship costs to be included in petitioner's attorneys' fees and costs award. Id. at 3-7.

Through informal communication between the parties and the undersigned, the petitioner was advised to include the request for guardianship costs as part of her motion for attorneys' fees and costs based on the Secretary's request. Shortly thereafter, the petitioner moved to strike her motion to amend the judgment. Pet'r's Mot., filed Mar. 5, 2018. The motion to strike was granted. Order, issued Mar. 8, 2018.

On March 8, 2018, Ms. Martin filed a motion for reimbursement of attorneys' fees and costs. As expected, the motion included a request for compensation of costs associated with creating and maintaining the guardianship for KM. The motion comprised of the following:

| Costs Not Related to Guardianship | 14,984.37 |
| Guardianship Costs | 12,965.00 |
| Attorney Fees | 39,100.00 |
| Total | 67,049.37 |

[4] The cost of the bond is a function of the amount bonded. This amount will decrease each year. The first year of the bond cost the petitioner $1,315 and the last year of the bond cost the petitioner $410. See Pet'r's Mot., filed Mar. 8, 2018, appd'x 3 at 7.

The Secretary responded to petitioner's motion.  Aside from the objections to the guardianship costs raised in his February 27, 2018 response, the Secretary did not object to petitioner's request.  Resp't's Resp., filed March 19, 2018, at 2.  Specifically, the Secretary stated that he is "satisfied that the statutory and other legal requirements for an award of attorneys' fees and costs are met" and recommended that the undersigned exercise his discretion in determining "a reasonable award for attorneys' fees and costs."  Id. at 2-3.

Because of the complexity of some of the issues presented by the petitioner's fees motion, the undersigned issued an order scheduling a status conference, to be held on July 24, 2018.  See order, issued June 28, 2018.  In this order, the undersigned requested that the parties be prepared to answer several questions relating to the statutory basis for Ms. Martin's request that guardianship costs be included in the motion for attorneys' fees and costs.  During the July 24, 2018 status conference, the Secretary requested additional time to formulate his position on the statutory authority for a special master to award guardianship costs because he was still formulating his opinion on that very question in a different case.  Order, issued July 26, 2018.  This request was granted, and the Secretary was ordered to submit a brief after his position in the related matter was formulated.  Id.  The Secretary filed his brief on August 27, 2018, and the petitioner replied on September 10, 2018.

On October 23, 2018, the petitioner amended her motion for fees to include $3,600 in attorney's fees incurred subsequent to the original fees motion as well as $2,000 spent on establishing a special needs trust.  These trusts are set up to ensure that injured children can maintain Medicaid benefits since, if the award passed directly to the petitioner, KM may become ineligible for Medicaid.  See, e.g., Torres v. Sec'y of Health & Human Servs., No. 09-867V, 2013 WL 2256136, at *3 (Fed. Cl. Spec. Mstr. Apr. 30, 2013) (discussing the benefit of a special needs trust for injured minors who receive compensation).

On November 2, 2018, the Secretary responded to the petitioner's supplemental fees request.  The Secretary stated that he left it to the "discretion of the Special Master to determine the reasonableness of petitioner's counsel's supplemental fee request."  Resp't's Resp., filed Nov. 2, 2018, at 1.  However, the Secretary objected to any award of fees or costs relating to the establishment of a special needs trust, arguing that the creation of the trust is not related to a proceeding on the petition.  Id. at 1-2.

4

On October 31, 2018, the undersigned awarded Ms. Martin interim fees in the amount of $39,100.  This amount represented an "irreducible minimum" of her fees request and covered all attorney and paralegal fees incurred prior to the March 8, 2018 motion.  <u>Interim Fees Decision</u>, issued October 31, 2018, 2018 WL 6241543.

The remaining portions of Ms. Martin's fees request are now ripe for adjudication.

*     *     *

Because Ms. Martin received compensation, she is entitled to an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300aa–15(e).  Thus, the questions are (1) whether Ms. Martin can be reimbursed for fees her attorney incurred in the dispute over attorney's fees, (2) whether Ms. Martin seeks a reasonable amount of costs for her life care planner, (3) whether Ms. Martin can be reimbursed for the costs of maintaining a guardianship, and (4) whether Ms. Martin can be reimbursed for the costs of establishing a special needs trust.  Ms. Martin's fees and costs are addressed in turn.

## I.    Attorneys' Fees

The Federal Circuit has approved the lodestar approach for evaluating the content of fee requests.  Calculating the lodestar is a two-step process.  <u>Avera v. Sec'y of Health & Human Servs.</u>, 515 F.3d 1343, 1348 (Fed.  Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  <u>Id.</u> at 1347-48 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  <u>Id.</u> at 1348.

### A.    <u>Reasonable Hourly Rate</u>

The petitioner requested the same hourly rate for her attorney, Mr. Bolton, as was found reasonable in the interim fees decision.  The undersigned continues to find the requested rate reasonable for the reasons set forth in the interim decision.  <u>See</u> <u>Interim Fees Decision</u>, issued Oct. 31, 2018, at 5.

5

B.    Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

While the vast majority of Ms. Martin's fee request was addressed in the October 31, 2018 decision awarding interim fees, Ms. Martin has supplemented her initial request with a request for $3,600 in fees incurred during the pendency of the present motion, but subsequent to the judgment on the merits.  See Pet'r's Mot., filed Oct. 23, 2018. These fees are often referred to as "fees on fees."

Relying, in part, on Vaccine Rule 10, the Secretary seemed to suggest that special masters cannot award fees for litigating fees.  Resp't's Resp., filed Aug. 27, 2017, at 2-4 and 6-7.  But, after Ms. Martin filed her October 23, 2018 motion for supplemental fees, including fees incurred for litigating fees, the Secretary did not interpose any objection to awarding those fees.  In light of the Secretary's lack of objection to any specific entries in Mr. Bolton's bill, the undersigned has reviewed the billing statement for its reasonableness.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

The Federal Circuit has endorsed awards of attorneys' fees for litigation fee disputes.  Schuenemeyer v. United States, 776 F.2d 329, 333 (Fed. Cir. 1985).  Special Masters have generally allowed "fees for fees," albeit with reductions consistent to maintain the reasonableness of any particular request. See Turkupolis v. Sec'y of Health & Human Servs., No. 10-351V, 2015 WL 393343, at *4-5 (Fed. Cl. Spec. Mstr. Jan. 9, 2015) (reducing fees for duplicative and excessive work); Sucher v. Sec'y of Health & Human Servs., No. 07-58V, 2013 WL 5532179, at *18 (Fed. Cl. Spec. Mstr. Sept. 17, 2013) (not compensating petitioners for time spent litigating an issue for which there was no basis to litigate); Brown v. Sec'y of Health & Human Servs., No. 09-426V, 2013 WL 2350541, at *2-3 (Fed. Cl. Spec. Mstr. May 6, 2013) (reducing fees for fees by two-thirds based on two out of three of the primary issues in petitioner's filings being unreasonable); Garcia v. Sec'y of Health & Human Servs., No. 07-286V, 2011 WL 6941702, at *10 (Fed. Cl. Spec. Mstr. Dec. 13, 2011) (not compensating an attorney for work necessitated by a problem the attorney created).

A review of the billing entries indicate that all of the individual entries and the total number of hours billed are reasonable.  Accordingly, petitioner is awarded $3,600 in attorneys' fees.

## II.    Costs

Ms. Martin seeks reimbursement for $33,549.37 in costs.  This includes routine costs of $400.00 for the filing fee, $81.47 for obtaining medical records, $193.57 in postage, and $5.00 for the notary.  These costs are reasonable and awarded in full.

The balance of costs comes from (A) an invoice of $14,304.33 for a life care planner (Nancy Bond), (B) $12,965.00 for costs associated with establishing and maintaining a guardianship for KM, and (C) $2,000 for costs associated with creating a special needs trust.  These three are evaluated below.

### A.    Life Care Planner

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).  Reasonable expert fees—such as the fee for a life care planner—are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours.  Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013).

The hourly rate charged by petitioner's life care planner appears reasonable.  However, the number of hours billed for this case does not.  In the undersigned's experience, a typical life care planner may charge approximately $4,000-$5,000 for a case of this complexity.  Thus, the $14,304.33 invoiced here raises eyebrows.

The life care planner's entries are often quite vague and make examining the reasonableness of the number of hours difficult.  Professionals who are seeking reimbursement through the judicial system are expected to create invoices that contain sufficient detail to allow an effective review of reasonableness.  See Avgoustis v. Shinseki, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011).  Although the professional in Avgoustis was an attorney, who had claimed that the attorney-client privilege overrode the expectation for detailed invoices, this same standard should govern invoices life care planners create.  However, in this case, Ms. Bond created very unspecific entries for nearly all of the entries relating to the correspondence.  Representative examples are: "Email from Nancy," "Emails from and to Dan," and "Spoke with Ms. Martin."  As this sample suggests, none of the entries describe the subject of the communication.

Without knowing the subject of the communication, assessing the reasonableness of the time spent is challenging.  Nevertheless, some insights can

7

be gained by a quick perusal.  Ms. Bond's invoice contains over two hundred entries, approximately 80% of which refers to correspondence.  For this correspondence, it appears that, with a handful of exceptions, the minimum entry duration is 0.2 hours.  As an example, Ms. Bond charged 12 minutes for leaving a voicemail "for Dan [Bolton] to call me."  This was not the only such entry, the life care planner also charged 12 minutes to leave a message for two other people to call her as well.  These time estimates appear excessive and indicate that the life care planner relied on a minimum time increment that resulted in excessive billing. See Rasmussen v. Sec'y of Health & Human Servs., No. 91-1566V, 1996 WL 752289, at *2 (Fed. Cl. Spec. Mstr. Dec. 20, 1996) (noting that counsel's practice of billing in increments not smaller than a quarter hour could result in overbilling).

Other entries indicate that the life care planner billed for secretarial work, including the time it took to purchase airfare, to reserve a hotel room, to confirm the address for the site visit, to seek directions via MapQuest, and to conduct even more research for her own flights.  It is well-established that secretarial work should not be reimbursed at professional rates.  Cf. Bratcher v. United States, 136 Fed. Cl. 786, 796, reconsideration denied, 137 Fed. Cl. 645 (2018) (declining to reimburse attorneys for work even at paralegal rates when plaintiffs failed to demonstrate that the work was not "largely clerical or secretarial in nature").

Furthermore, Ms. Bond expended a non-insubstantial amount of time researching commonplace costs (e.g., skilled nursing providers, cleaning, hand controls, and a Bruno seat).  The amount of time spent researching these costs appears excessive.  See Manis v. Sec'y of Health & Human Servs., No. 13-732V, 2016 WL 4437959, at *3 (Fed. Cl. Spec. Mstr. Apr. 12, 2016) (finding a $5,580 life care plan excessive, noting that "given life care planners' professional expertise, the projected costs for certain relatively common items (such as medications, physical therapy, neurology appointments, and high deductibles) should be readily available to them, and thus quickly accessible.  Life care planners are expected to have familiarity with such commonplace costs").

Life care planning contributes to a process by which the parties reliably estimate future medical expenses that the Vaccine Act authorizes.  See Glaser v. Sec'y of Health & Human Servs., No. 06-764V, 2016 WL 4491493, at *11 (Fed. Cl. Spec. Mstr. June 6, 2016) ("as the Vaccine Program has matured, the role of life care planners in assisting parties calculate damages awards has grown, and made their jobs more complex as well—resulting in their services becoming more expensive"), decision vacated on reconsideration in non-pertinent part, No. 06-764V, 2016 WL 4483022 (Fed. Cl. Spec. Mstr. June 29, 2016).  However, the importance, prevalence, and expense of life care planners to the Vaccine Program

only emphasizes the importance of a careful review of the billed expenses. Here, the life care planner's invoice does not support the conclusion that the number of hours billed was appropriate. In the undersigned's estimation, a 35% reduction in the compensated hours is appropriate and results in a reasonable, if not generous, award.

### B.   Guardianship Costs

Ms. Martin also requests $12,965.00 in costs associated with establishing and maintaining the guardianship for KM. As will be discussed below, the Secretary does not contend that costs associated with establishing a guardianship are not reimbursable under the Act. However, the Secretary does argue that all costs associated with maintaining a guardianship are ineligible. Furthermore, the Secretary argues that all guardianship costs, regardless of whether they pertain to establishing or maintaining the guardianship, must be incurred prior to the entry of judgment to be compensable under the Act.

#### 1. Background Law Regarding Guardianship Requirement

The question of whether costs associated with establishing and maintaining a guardianship can be compensated under the Vaccine Act has been a lingering question in the Vaccine Program. As discussed below, different special masters and judges of the Court of Federal Claims have come to different answers on this very question. In addition, a recent case decided by Judge Lettow of the Court of Federal Claims also offers another approach as to how the Vaccine Program may address the question of guardianship costs going forward. See McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2018 WL 1868584, at *4 (Fed. Cl. Apr. 3, 2018), appeal docketed, no. 2018-2046 (June 6, 2018). In McCulloch, the special master had awarded petitioner's attorneys' fees request, which included funds for the preparation of an annual guardianship plan, the annual accounting of the estate, an annual audit fee, and the annual bond premium. Respondent objected on the basis that these costs were not reimbursable under the terms of the Act. Judge Lettow agreed with respondent, finding that "the Vaccine Act's terms specify that reimbursement of attorneys' fees and costs is proper only for those "incurred in any proceeding on [a Vaccine Act] petition" and that the state guardianship proceedings were "not themselves proceedings upon a Vaccine Act

petition."[5]  Judge Lettow did find, however, that the guardianship costs were appropriate under 42 U.S.C. § 300aa–15(a)(1)(A) as "reasonable projected unreimbursable expenses" resulting from the vaccine-related injury.[6]

McCulloch will provide a vehicle for the Federal Circuit to interpret this provision of the Vaccine Act for the first time.  Once the Federal Circuit issues a precedential decision, its interpretation will be binding.  See Guillory v. Sec'y of Health & Human Servs., 59 Fed. Cl. 121, 124 (2003), aff'd, 104 Fed. Appx. 712 (Fed. Cir. 2004).  Until the Federal Circuit speaks, other previous adjudications by special masters and judges of the Court of Federal Claims serve as persuasive authority for deciding the case here.  See Hanlon v. Sec'y of Health & Human Servs., 40 Fed. Cl. 625, 630 (1998), aff'd, 191 F.3d 1344 (Fed. Cir. 1999).

As the respondent notes, judges of the Court of Federal Claims have found the statutory language to preclude awards for attorneys' fees and costs for the "myriad legal implications of establishing or administering an estate." Siegfried v. Sec'y of Health & Human Servs., 19 Cl. Ct. 323, 325 (1990).  In another case concerning guardianship costs, a judge of the claims court made clear that just because an expense was incurred but for a vaccine injury did not make the expense compensable.  Mol v. Sec'y of Health & Human Servs., 50 Fed. Cl. 588, 591 (2001); see also Lemon v. Sec'y of Dep't of Health & Human Servs., 19 Cl. Ct. 621, 623 (1990) (disallowing fees related to the administration of the estate of petitioner's child).

Part of the confusion arises out of the ambiguity as to whether creating a guardianship is statutorily required.  The Vaccine Act notes that petitions relating to an alleged vaccine injury suffered by a minor or disabled person must be brought by their legal representatives.  42 U.S.C. § 300aa-11(b)(1)(a).  The statute defines a legal representative as "a parent or an individual who qualifies as a legal guardian under State law."  42 U.S.C. § 300aa-33(2).  As noted by Judge Bruggink in Spates v. Sec'y of Health & Human Servs., there is some apparent ambiguity as to "whether a parent is a legal representative per se, irrespective of state law, or whether a parent must simultaneously qualify as a legal guardian under state law to

_____

[5] As noted previously, the Secretary appears to take a different position here, arguing that the establishment of the guardianship was a proceeding on the petition.  Resp't's Br., filed Aug. 27, 2018, at 5.

[6] With amazing prescience, Ms. Martin originally attempted to modify the merits judgment.  See Pet'r's Mot., filed Feb. 19, 2018.  However, she later filed a motion to strike her motion.  Pet'r's Mot., filed Mar. 5, 2018.  Ms. Martin has not renewed her motion to amend the merits judgment.

be a legal representative under the Act." 76 Fed. Cl. 678, 681 (2007).  While some cases have wrestled with this question, the Federal Circuit has not offered any guidance on this specific issue.  See, e.g., Taylor v. Sec'y of Health & Human Servs., No. 16-1382V, 2017 WL 6523675, at *3 (Fed. Cl. Spec. Mstr. Oct. 30, 2017).

This ambiguity is not necessarily bad.  Because one interpretation of section 33(2) permits a parent of a minor to prosecute a petition without first being appointed a guardian under state law, special masters have adjudicated many cases with a parent as a petitioner.  For example, in the vast majority of the more than 4,000 autism cases, the petitioner was a parent who had not gone to probate court to be appointed guardian.  Because the autism cases were not successful, the thousands of parents avoided the time, trouble, and expense of bringing a probate court action.

However, in cases in which parents receive compensation for their child, the alternative interpretation of section 33(2) comes into play.  Because it is at least arguable that parents can act as petitioners only when a process under state law recognizes them as guardians, the Secretary requires, as part of a stipulation, that parents agree to be appointed guardians whom courts supervise.[7]  (For the language of the stipulation in the present case, see footnote 2 above.)  The involvement of the state probate court makes much more sense in compensated cases.  The probate court can oversee the actions of the parents / guardians to ensure funds are used for the benefit of the injured child / ward.  Importantly, for the purpose of this proceeding, the Secretary has taken the position that the Act requires the establishment of legal guardianship to bring the claim.  Resp't's Br., filed Aug. 27, 2018, at 5-6.

Since the Secretary has chosen to impose these guardianship costs as a condition to an award based upon a stipulation, special masters have awarded guardianship costs in the form of attorneys' fees over the years.  In doing so, special masters have often stated that doing so was mere common sense.  See, e.g., Finet v. Sec'y of Health & Human Servs., No. 03-348V, 2011 WL 597792, at *3 (Fed. Cl. Spec. Mstr. Jan. 31, 2011) ("This trend of using common sense to award guardianship costs when they are mandated as a *sine qua non* of receiving a

---

[7] Like typical litigation, most cases in the Vaccine Program, including this one, resolve via an informal resolution between the parties.  In the context of negotiations, the parents / petitioners might conceivably object to the Secretary's demand that they agree to be appointed guardians.  However, the undersigned is not aware of any instances in which the Secretary has bargained away a demand for guardianship.

vaccine damages award should continue"); Cansler v. Sec'y of Health & Human Servs., No. 09-596V, 2011 WL 597791, at *3 (Fed. Cl. Spec. Mstr. Feb. 2, 2011) ("it is unconscionable to request, negotiate or demand [a guardianship] for the recipient of the vaccine funds and then shift the costs to the parent. . . . [R]espondent's position on this close issue is shortsighted and threatens their stated policy, a very good policy, of protecting the minor's vaccine award") (citing Ceballos v. Sec'y of Health & Human Servs., No. 99-97V, 2004 WL 784910 (Fed. Cl. Spec. Mstr. Mar. 25, 2004)).

While the Secretary states that a guardianship is required "to bring the claim," Resp't's Br., filed Aug. 27, 2018, at 5, the Secretary has not, in the undersigned's experience, often filed a motion to dismiss a Vaccine Petition for lack of standing.  Cf. Bernhardt v. Sec'y of Health & Human Servs., 82 Fed. Cl. 287 (2005) (the Secretary questioned whether a non-custodial parent could file a petition).  The Secretary's inaction has contributed to a "practice [in which] this requirement is not strictly enforced."  Resp't's Br. at 5.  This is not necessarily a bad thing; the Secretary's exercise of discretion in not filing motions to dismiss seems sensible insofar as a motion to dismiss would probably prompt petitioners to file state court actions to create guardianships, incur fees, and ultimately recoup those fees from the Vaccine Injury Trust Fund.

Here, Ms. Martin's case followed a typical pattern in that she became her child's guardian only after she was awarded compensation from the Vaccine Program, and she now seeks reimbursement for the attorneys' fees and costs associated with the guardianship.  The undersigned ordered the parties to brief this issue.  The parties' arguments are summarized in turn.

## 2. The Secretary's Arguments

The Secretary urges the undersigned to construe narrowly the portion of the Vaccine Act that authorizes reimbursement of fees and costs.  In support of his argument, the Secretary relies heavily on the Supreme Court's instruction that fee-shifting statutes and statutes waiving sovereign immunity must be narrowly construed in favor of the presumption that Congress did not intend to waive sovereign immunity and that parties will pay their own attorney's fees.  Resp't's Br., filed Aug. 27, 2018, at 2 (citing Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2164 (2015); Lane v. Pena, 518 U.S. 187, 192 (1996); and Nantkwest, Inc. v. Iancu, 898 F.3d 1177, 1186 (Fed. Cir. 2018)).  Accordingly, the Secretary asks the undersigned to interpret the language of the Vaccine Act strictly and to find as compensable only those costs that have been "necessarily incurred in connection with resolving the merits of a petition for compensation filed under the

Act, through entry of final judgment on the underlying claim." Resp't's Br., filed Aug. 27, 2018, at 3.

Applying the statutory interpretation offered by the Secretary to the issue of guardianship costs and Ms. Martin's case specifically, the Secretary acknowledges that, generally speaking, costs associated with establishing a guardianship are reimbursable since the state guardianship proceeding would be part of the proceedings on the petition. Resp't's Br., filed Aug. 27, 2018, at 5.[8]  However, the Secretary argues that, to the extent Ms. Martin incurred costs associated with establishing the guardianship after the date judgment entered, those costs would not be reimbursable since entry of judgment marks a point at which costs subsequently incurred are not compensable under the Vaccine Act.  Id. at 6 ("However, insofar as the final judgment on the underlying merits concludes the proceedings on the petition, any guardianship costs incurred after that point in time would not be reimbursable").[9]  Accordingly, the Secretary's position appears to be that costs associated with establishing a guardianship are compensable so long as those costs were incurred prior to judgment.

---

[8] By recognizing that costs associated with establishing an estate are reimburseable, the Secretary has taken a position different from holdings from judges of the Court of Federal Claims (or its predecessor).  For example, in Siegfried, the Claims Court stated: "The [Vaccine] Act does not provide attorney fee awards to cover the myriad legal implications of establishing or administering an estate." 19 Cl. Ct. at 325.  Siegfried, in turn, was the primary reason that Mol disallowed costs associated with establishing a guardianship.  50 Fed. Cl. at 588.  However, neither Siegfried nor Mol discussed the significance of sections 11(b)(1)(a) (requiring legal representatives to bring actions for injuries a minor suffers) and 33(2) (defining a legal representative).

Although the Secretary's position in Ms. Martin's case differs from the outcome of Siegfried and Mol, the Secretary's current argument is consistent with how he argued the motion for review in McCulloch.  There, "the reimbursement of guardianship costs already incurred [was] not challenged by the government."  McCulloch, 137 Fed. Cl. at 600.

[9] It appears that Ms. Martin may have incurred some of the costs associated with establishing the guardianship after the entry of judgment for Ms. Martin's petition.  See Pet'r's Mot., filed Mar. 8, 2018, appd'x 3 at 3 (noting costs in November 2017 when judgment entered October 31, 2017).  Even though the Secretary took the position that costs incurred following the entry of judgment are not compensable, he did not specifically make the argument that Ms. Martin's costs for establishing the guardianship were thus not compensable, leaving it to the undersigned to make this inference.  As a result, the factual question of when Ms. Martin incurred costs in relation to the date of judgment is underdeveloped in the record.  However, because the decision here does not turn on this question, additional fact-finding is not necessary at this time.

13

However, the Secretary also argues that costs paid either before or after the entry of judgment cannot be reimbursed under the Act when those costs are related to maintaining the guardianship in future years. The Secretary takes the position that Ms. Martin's prepayment of future years' guardianship costs—costs required to maintain the guardianship going forward—have not been "incurred" since they are speculative future costs. Accordingly, the Secretary argues, they are not appropriate for compensation under his reading of 42 U.S.C. § 300aa-15(e). Id.

### 3.  Ms. Martin's Arguments

Ms. Martin contends that, as an initial matter, the Secretary's reliance on Baker Botts to narrowly construe the language of the Vaccine Act ignores the fact that the Vaccine Act provides a compensation program wherein all reasonable attorneys' fees and costs are reimbursable. Pet'r's Br., filed Sept. 10, 2018, at 6-7. In other words, the petitioner contends that a default towards the American Rule when interpreting the language of the Vaccine Act is inapposite since the Vaccine Act did not contemplate petitioners shouldering the burden of any of their reasonable costs related to bringing petitions with a reasonable basis and good faith. In this way, comparing the Vaccine Act to other areas of federal law would be, in the petitioner's opinion, a mistake.

Ms. Martin also rebuts the Secretary's contention that the costs in question have not been "incurred." The petitioner argues that the decision and judgment entered into this case specifically directed her to establish a conservatorship for KM and that that is exactly what she did. Id. at 7-8. By prepaying the costs for the guardianship bond, she claims that she attempted to guarantee that KM would receive her compensation, uninterrupted, as provided in the decision and judgment. Id.

### 4.  Analysis

A foundational question in this case is whether the undersigned should give effect to the plain meaning of the Vaccine Act or whether, as the Secretary argues, canons of statutory construction require that the Act be construed strictly in the Secretary's favor.

The Secretary offers two arguments in support of his position that the statute must be narrowly construed. The first is based on the principle that the sovereign is immune and the second recognizes the longstanding tradition of the American Rule regarding attorneys' fees. The Secretary argues that, as a matter of well-established canons of statutory construction, the Vaccine Act must be interpreted

14

by the undersigned with a presumption in favor of each of these default rules. However, neither is persuasive.

The Secretary is correct that "a waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." Lane, 518 U.S. at 192.  Put another way, absent clear language, waivers of sovereign immunity are construed narrowly.  United States v. Williams, 514 U.S. 527, 531 (1995).

On the other hand, courts should not narrow Congress's waiver of sovereign immunity beyond Congress's objectives.  Ed A. Wilson, Inc. v. Gen. Servs. Admin., 126 F.3d 1406, 1408 (Fed. Cir. 1997) (holding that once it has been established that Congress has waived immunity, the courts should not assume the authority to limit the waiver that Congress has established); Jones v. Brown, 41 F.3d 634, 638 (Fed. Cir. 1994) (quoting United States v. Kubrick, 444 U.S. 111, 117–18 (1979)).  In Jones, the Federal Circuit declined to narrowly construe a statute authorizing fees, the Equal Access to Justice Act, because the statute constituted an "unequivocal expression of the government's consent to be sued" with respect to the contested fees and costs.  41 F.3d at 634.  Instead, Jones relied on the plain meaning of the statute, though in doing so it considered the context surrounding the passage of the disputed Act.  Id. at 640.  Accord Brown v. Gardner, 513 U.S. 115, 118 (1994) ("the meaning of statutory language, plain or not, depends on context").[10]

The Vaccine Act creates a compensation program that waives sovereign immunity.  See 42 U.S.C. § 300aa-12(b) (identifying the Secretary of Health and Human Services as the respondent); cf. Schumacher v. Sec'y of Health & Human Servs., 2 F.3d 1128, 1135 n.6 (Fed. Cir. 1993) (indicating that Congress intended the government to pay compensation to parents who had filed a lawsuit against the manufacturer of a drug that allegedly made their child susceptible to adverse reactions to other chemical substances).  Thus, Congress has made the appropriate waiver and to narrow it beyond the plain meaning of the Vaccine Act, by construing the Act in favor of the Secretary, would require the undersigned to intrude on Congress's prerogatives.

The Secretary also argues that the Vaccine Act must be construed with a presumption towards the longstanding tradition of the American Rule for

---

[10] While Jones interpreted a fee-shifting statute, the Equal Access to Justice Act, Jones did not discuss the American rule that requires litigants to pay their own attorneys' fees and costs.

attorneys' fees and costs.  Under the American Rule, parties pay their own attorneys' fees and costs.  Similarly, any shift from the default of the American Rule must be the result of "specific and explicit provisions" contained in the statute that demonstrate Congress intended to deviate from the default state of affairs.  Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 260 (1975).  As the Supreme Court recently noted, statutes that invade the common law should be read with a presumption favoring the retention of long-established and familiar legal principles.  Baker Botts, 135 S. Ct. at 2169.

However, as the Federal Circuit recently restated en banc, in passing the Vaccine Act, "Congress specifically and explicitly authorized the award of attorneys' fees."  Nantkwest, 898 F.3d at 1186.  By doing so, the Federal Circuit noted, the Vaccine Act "displace[d] the American Rule."  Id. (citing Sebelius v. Cloer, 569 U.S. 369, 380 (2013)).  Accordingly, the only question here is whether prepayment of future guardianship costs is compensable under a plain reading of the statute.  Cf. Nantkwest, 898 F.3d at 1186 (interpreting Cloer to hold that once it was determined that Congress displaced the American Rule, "the only question for the Court was whether attorneys' fees could be recovered for untimely petitions").

Proceeding in this manner, as with any question of statutory interpretation, the analysis begins with the language of the statute itself.  See, e.g., United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989).  The Act provides that compensation for attorneys' fees must be limited to "reasonable attorneys' fees, and . . . other costs, incurred in any proceedings on such petition."  42 U.S.C. § 300aa-15(e)(1).  Thus, after petitioners are found entitled to an award of their attorneys' fees and costs, the Vaccine Program will award those costs that are (1) incurred, (2) in a proceeding on the petition, and (3) are reasonable.  42 U.S.C. § 300aa-15(e).  The question at bar is whether the costs associated with KM's guardianship meet these three requirements.

## 5.  Application

The present question is complicated by the different costs in consideration as well as by the fact that the Secretary's position regarding those costs are a function of when the costs were incurred.  For the purposes of clarification, the various costs and the Secretary's position are restated here:

| Item | Amount | Respondent's Position on Compensability |
|------|--------|------------------------------------------|
| Fee for Attorney Abigail Peoples for establishing the guardianship | $875.00 | Compensable, as long as incurred prior to judgment |
| Fee for filing for guardianship | $120.00 | Compensable, as long as incurred prior to judgment |
| Cost for the first year of the guardianship bond | $1,315.00 | Compensable, as long as incurred prior to judgment |
| Cost for future years' guardianship bond | $10,655.00 | Not compensable under any circumstances. |

These costs can be divided into those costs related to establishing the guardianship (the first three) and maintaining the guardianship (the fourth). The costs can also be analyzed to the extent that it was paid prior to or after judgment. For each of these costs, the undersigned will evaluate whether the cost meets the three statutory requirements for compensation.

Incurred. As exhibited by the check entered into the record, Ms. Martin has paid the costs for establishing and maintaining the guardianship until KM reaches the age of 18. See Pet'r's Mot., filed Mar. 8, 2018, appd'x 3 at 9. Thus, the issue turns on the legal question of what "incur" means.

In a case interpreting a since repealed section of the Vaccine Act, the Federal Circuit defined "incur." "To 'incur' expenses means to pay or become liable for them." Black v. Sec'y of Health & Human Servs., 93 F.3d 781, 785 (Fed. Cir. 1996). Thus, since Ms. Martin has paid the expense, it appears that she has incurred it.

Despite the seemingly clear language of the Federal Circuit in Black, the Secretary argues here that Ms. Martin has not incurred an expense with regards to these guardianship costs because when she made the payment she was not yet, according to the Secretary, legally liable for that cost. Resp't's Br., filed Aug. 27,

2018, at 2-3.  To support this interpretation of what it means to "incur" an expense, the Secretary cites the <u>Black</u> decision, but from the Court of Federal Claims.  In this decision, the judge noted that an expense is incurred "at the moment one becomes legally liable, not at the moment when one pays off the debt, nor at the moment when one decides that an expense will become necessary one day in the future."  <u>Black v. Sec'y of Health & Human Servs.</u>, 33 Fed. Cl. 546, 550 (1995), <u>aff'd</u>, 93 F.3d 781 (Fed. Cir. 1996).  While this passage offers some support to the Secretary's argument, the Secretary has not explained why the Federal Circuit's definition of incurred should not control.[11]

In addition, the parties must have contemplated that Ms. Martin would maintain her status as guardian of KM.  The Secretary promised to purchase an annuity that would provide a monthly benefit to KM and these payments from the insurance company would be made payable to Ms. Martin "as the court-appointed guardian/conservator of the estate of KM."  Stipulation ¶ 10.

<u>On the petition</u>.  A compensable cost must also be incurred "on the petition." The Secretary's briefs appear to conceive of this requirement as having two parts. First, the Secretary argues that a cost incurred on a petition must be clearly contemplated by both the Vaccine Act and the Vaccine Rules.  Resp't's Br., filed Aug. 27, 2018, at 5-6.  Second, the Secretary argues that a cost incurred on a petition must be incurred prior to the date judgment enters.  <u>Id.</u> at 6.  These two components of the Secretary's argument, as they relate to Ms. Martin's motion, are addressed in turn.

As the Secretary concedes, "both the Act and the Rules clearly contemplate that a legal guardianship will need to be established at some point during the proceedings on the petition" and, accordingly, the costs associated with establishing that guardianship are reimbursable.  <u>Id.</u> at 5.  Nonetheless, the Secretary still argues that future guardianship costs are not proceedings on the petition.

Once the Secretary concedes that establishing the guardianship is a proceeding on the petition, it seems to follow that maintaining the guardianship is

---

[11] The Secretary's reliance on a somewhat misleading quote from the Court of Federal Claims while omitting the binding language from the Federal Circuit that appears to be adverse to the Secretary's position is concerning, especially because the undersigned alerted the Secretary's counsel about the Federal Circuit's opinion in <u>Black</u> in a status conference held on July 24, 2018.

also part of the petition.  After Ms. Martin places herself under the jurisdiction of probate court to become KM's guardian, the law in North Carolina requires her to do certain things, such as obtain an annual bond.  "Before issuing letters of appointment to a . . . guardian of the estate the clerk shall require the guardian to give a bond payable to the State."  N.C. Gen. Stat. 35A-1231(a).[12]  Ms. Martin also presented a letter from the attorney who represented them in the guardianship proceeding, Abigail E. Peoples, and who cited relevant law from North Carolina. Attorney People concluded that "Since the North Carolina courts have made this bond a requirement in order for the guardianship to exist, I believe it is only proper for HHS to pay the bond premium."  Pet'r's Mot., filed Mar. 8, 2018, appd'x 3 at 2.  North Carolina's requirement for a bond makes this case distinguishable from Barrett v. Sec'y of Health & Human Servs., No. 09-389V, 2014 WL 2505689, at *6-7 (Fed. Cl. Spec. Mstr. May 13, 2014), in which a special master found that a petitioner had failed to demonstrate that expenses associated with periodic filings to the Pennsylvania Orphans' Court were legally required.  Accordingly, the special master in Barrett declined to reimburse the petitioner for the associated expenses.

The Secretary has not presented any argument as to how Ms. Martin could avoid complying with the law requiring the bond.  Moreover, it would seem that the Secretary would want Ms. Martin, as a matter of policy and as a matter of her compliance with the terms of the judgment, to comply with the state laws surrounding guardianship.  The Secretary does not reconcile how the same exact expense can be "on the petition" on the day before judgment but not be the day after.

As for the Secretary's argument that any expense following the date of judgment is, per se, *not* a cost "incurred on the petition," the argument is inconsistent with the stipulation.  The stipulation stated: "Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of KM's estate under the laws of the State of North Carolina."  Stipulation ¶ 16.  By allowing Ms. Martin 90 days to become KM's guardian, the parties anticipated that Ms. Martin might take some actions after the date of judgment that are part of the process for receiving compensation through the Vaccine Program.  Ms. Martin should not be penalized

---

[12] Congress, presumably, was aware that state law required guardians to post bonds when it enacted the Vaccine Act.  See Fitzgerald v. Dep't of Homeland Security, 837 F.3d 1346, 1355 (Fed. Cir. 2016).

for doing something the stipulation permitted her to do — become guardian after the judgment.

The date of judgment has not been used to identify costs "incurred on the petition." During briefing, the undersigned directed the Secretary to address whether attorneys' fees relating to a motion for fees and costs that were incurred after the date of judgment were compensable based on the Secretary's proffered interpretation of what constitutes a cost "on the petition." In response, the Secretary took the position that "a narrow construction of Section 15(e), as required by <u>Baker Botts</u>, would not authorize reimbursement of fees and costs incurred in connection with a motion for fees and costs, either before or after entry of judgment on the merits." Resp't's Br., filed Aug. 27, 2018, at 6-7. In other words, the Secretary's interpretation of the Act forecloses reimbursement of fees incurred by petitioners on motions for fees and costs. As the Secretary acknowledged, and as reviewed in section I.B, above, fees on fees have been awarded in the Vaccine Program since its inception and the Secretary has not even taken the step of challenging Ms. Martin's request for these fees here. <u>See</u> Resp't's Resp., filed Nov. 2, 2018, at 1-2. The undersigned is disinclined to interpret the words of the Vaccine Act in a matter that runs contrary to decades of practice in this Program including the Secretary's own practice in this proceeding.

In addition, the Secretary's argument that the date of judgment marks a bright line by which all subsequent costs are now "off the petition" seems to require the conclusion that costs incurred *prior* to filing the petition are similarly "off the petition," regardless whether those costs were clearly contemplated by the Act and relate to the proceeding. However, the Secretary finds these types of costs to be compensable when they are reasonable. Resp't's Br., filed Aug. 27, 2018, at 6-7. The Secretary does not explain how a cost that is incurred prior to filing of a petition can be "on the petition" when costs incurred after the entry of judgment are, according to the respondent, necessarily, "off the petition."

In short, the undersigned agrees with the Secretary's interpretation that for a cost to be "on a petition," the Vaccine Act or the Vaccine Rules must contemplate the item. Because Ms. Martin's establishment of the guardianship clearly meets that statutory requirement, the undersigned finds that, necessarily, the costs associated with maintaining the guardianship are similarly "on the petition." Furthermore, the undersigned declines to adopt the Secretary's argument that the cost must also occur, by law, prior to the entry of judgment. For these reasons, the undersigned finds that the costs of establishing and maintaining Ms. Martin's guardianship are costs incurred on her Vaccine Program petition.

Reasonable. Of course, to incur a cost on a proceeding is not sufficient to establish that the cost is compensable by the Vaccine Program. Before any cost is reimbursed from the Vaccine Trust Fund, a special master or judge of the Court of Federal Claims must conclude that the cost was reasonable. See McIntosh, 139 Fed. Cl. at 248. This requirement of the statute provides a robust line of protection against petitioners abusing the Vaccine Program by incurring excessive expenses or expenses not appropriate under the Act.

Ms. Martin's request for costs she incurred to maintain the guardianship totals $10,655.00. Interestingly, the Secretary does not appear to contest the reasonableness of the expense explicitly. The Secretary describes the cost as "modest," Resp't's Br., filed Feb. 27, 2018, at 7, essentially conceding that they are not excessive.[13]

It is true, as the Secretary argues, that these prepayment costs are speculative insomuch as they may never be necessary. They are prepayments of a cost. KM may move out of North Carolina to a state that does not require a guardianship bond.[14] KM may also die before she reaches the age of 18. In opposing payments for guardianships, the Secretary has argued that the speculative nature of the cost creates the potential for a windfall for the petitioner in the case she moves or dies. Resp't's Br., filed Feb. 27, 2018, at 7 ("if petitioner ever moves outside of North Carolina, the alleged future costs may no longer be necessary, resulting in a windfall for petitioner"); McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2017 WL 7053992, at *12 (Fed. Cl. Spec. Mstr. Dec. 19, 2017), aff'd in part on other grounds, 137 Fed. Cl. 598 (2018) ("Respondent argues that if A.M. passes away before the estimated date, it would potentially create a windfall for petitioner.") In this way, Ms. Martin's decision to prepay the costs may be argued to be an unreasonable expense that is, thusly, not compensable.

However, the undersigned does not find that the fact that these costs were a prepayment makes the expense unreasonable. As an initial matter, the undersigned

---

[13] Even more, he notes that Ms. Martin can pay for these costs out of the money received in her award for compensation. Id. This, of course, is not what the compensation KM received was for. Arguing that the compensation be used to pay for the guardianship expense is a somewhat callous line of reasoning that discredits KM's need and entitlement for the compensation she was awarded. It treats the award as somehow granting more to Ms. Martin than she was legally entitled to, something the undersigned sees no evidence to support.

[14] The Secretary has not identified states that do not require a guardian to post a bond.

recognizes that there is some risk that KM may not require the guardianship bonds due to the "vagaries of life." Barrett, 2014 WL 2505689, at *5.  But, it makes little sense that the answer to these low probability events is to shift the cost of the high probability event—KM's need for the guardianship—entirely onto the petitioner.

Even more, the petitioner has taken reasonable steps to try to prevent any such "windfall" from occurring.[15]  The monies for the future years' guardianship bond costs have been paid to the Bar Plan Surety and Fidelity Company with a note that any overages in the bond fee, due to KM's death or relocation, be remitted to the Secretary.  Pet'r's Mot., filed Mar. 8, 2018, appd'x 3 at 8.  While the Secretary protests that he does not have an effective way of enforcing this arrangement, see Resp't's Mot., filed Aug. 27, 2018, at 6, it seems that the Secretary could be considered a third-party beneficiary of the existing contract or the Secretary could have participated in the process by which Ms. Martin became the guardian.  Nonetheless, Ms. Martin's attempt to address the Secretary's concern constitutes a reasonable effort.  While this arrangement may not be perfect, the perfect should not be the enemy of the good.

For the aforementioned reasons, the undersigned finds that those costs for establishing and maintaining KM's guardianship that were actually paid by the petitioner are costs incurred by her on the petition and that they were reasonable expenditures.  Based on the plain meaning of the Vaccine Act, they are thus compensable costs.

Although the undersigned finds that the costs of maintaining a guardianship are reimbursable without consideration of the statutory and legislative context of the Vaccine Act, consideration of this context is nonetheless an important element of the analysis.  Cloer, 569 U.S. at 380.  In Cloer, all but two members of the Supreme Court found that the Secretary's position in the case was "inconsistent with the goals of the fees provision itself." Id.  More specifically, the Court found that the Secretary had failed to explain why Congress would have intended to promulgate a statute that would have discouraged counsel from representing certain difficult cases, which would have been the result of the Secretary's proffered interpretation of the Act. Id.  Based on the consideration given to the purposes of the Act in Cloer, the undersigned also finds it appropriate to visit briefly that issue here to the extent it may inform the present question. See also Saunders v. Sec'y of Health & Human Servs., 25 F.3d 1031, 1036 (Fed. Cir. 1994)

---

[15] The amount of the bond for maintaining the guardianship is $10,655.00.  Even if Ms. Martin were to avoid the costs of paying the bond, her apparent "windfall" would remain, in the Secretary's word, "modest."

(noting, in the context of the Vaccine Act, that a court should try to construe the Act in a way which is consistent with the intent of Congress).

The Vaccine Act was enacted to provide generous compensation to meritorious claimants.  See Bruesewitz v. Wyeth LLC, 562 U.S. 223, 247 (2011) ("Congress sought to provide generous compensation to those whom vaccines injured.") (citing H.R. Rep., at 5, 24, U.S. Code Cong. & Admin. News, 1986, at p. 6346, 6365);  see also Cloer v. Sec'y of Health & Human Servs., 654 F.3d 1322, 1326 (Fed. Cir. 2011) ("the Vaccine Program was intended to provide relative certainty and generosity of compensation awards in order to satisfy petitioners in a fair, expeditious, and generous manner") (internal citations omitted), aff'd, 569 U.S. 369 (2013).  To achieve this objective, Congress also recognized the importance of effective legal representation, which is why reasonable attorneys' fees and costs are awarded when a claim is supported by reasonable basis and is brought in good faith. See 42 U.S.C. § 300aa-15(e); Saunders, 25 F.3d at 1036 (noting that a secondary purpose of the Act is to ensure that claimants have access to a readily available and competent bar to prosecute their claims).

Of course, this generosity is not unbound and remains limited by the restrictions imposed by the statute itself.  Griglock v. Sec'y of Health & Human Servs., 687 F.3d 1371, 1376 (Fed. Cir. 2012) ("Thus, the Vaccine Act provides a generous compensation program, but with limits, including the statute of limitations, to that generosity").  Nonetheless, within the bounds of the statutory scheme laid out by Congress, it appears Congress's objective was to provide compensation generously, to shift the petitioners' costs of obtaining compensation onto the government, and to recognize and account for the importance of effective representation in bringing these challenging cases.

In case any ambiguity exists regarding Congress's intentions for what costs associated with a petition the petitioners themselves would be personally responsible for, the Vaccine Act explicitly prohibits attorneys from charging petitioners any fees for services in connection with a petition in excess of that amount awarded through the Program.  42 U.S.C. § 300aa-15(e)(3) ("no attorney may charge any fee for services in connection with a petition filed under section 300aa-11 of this title which is in addition to any amount awarded as compensation by the special master or court").  Thus, it would appear that Congress did not intend for meritorious petitioners to be responsible for *any* of their reasonable fees or costs related to services provided in connection with a petition.  In the undersigned's opinion, the creation of the guardianship and the prepayment of the bond costs for that guardianship are services provided to KM in connection with her petition.  Accordingly, the interpretation of the Vaccine Act proffered by the

Secretary appears directly at odds with the overall objectives of the Program as well as the statutory context of the section in dispute.

### C.   Special Needs Trust

In her supplemental fees petition, Ms. Martin also requested reimbursement of $2,000 associated with creating a special needs trust for KM. As noted before, these trusts are created for the purpose of allowing petitioners to retain certain Medicaid benefits. However, in contrast to guardianship costs, neither the Vaccine Act, the stipulation to which the parties had agreed, nor the undersigned's decision on that stipulation, contemplated the creation of a special needs trust. Accordingly, the cost is not compensable under Section 15(e) of the Vaccine Act since it is not a proceeding on the petition. See also J.R. v. Sec'y of Health and Human Servs., No. 16-0813V, 2018 WL 5629723, at *2 (Fed. Cl. Spec. Mstr. Sept. 28, 2018) (finding costs associated with the creation of a special needs trust to be unreimbursable for these same reasons and noting two other decisions coming to the same conclusion).

\*   \*   \*

For the aforementioned reasons, petitioner is awarded:

**A lump sum of $26,542.85 in the form of a check made payable to petitioner and petitioner's attorney, Dan Bolton, III.**

These amounts represents reimbursement attorneys' fees and other litigation costs available under 42 U.S.C. § 300aa-15(e). In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

s/Christian J. Moran
Christian J. Moran
Special Master